USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/05/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
  LEVIT FERNANDINI, :
 :
                              Plaintiff, :
 : 1:15-cv-3843-GHW
                -v- :
 : MEMORANDUM OPINION
  UNITED STATES OF AMERICA, CHARLES : AND ORDER
  E. SAMUELS, JR., CATHERINE L. :
  LINAWEAVER, CHARLSTON IWUAGWU, :
  KENNETH HAAS, WANDA WINGATE, :
  ANDREW BUTLER, JAMAL JAMISON, :
  DENNIS PEREZ, JOHN SACCO, OCTAVIO :
  MATOS, KENNETH ALVARADO, HENRY :
  HEANEY, PAT NICHOLSON, BRENDA :
  DEAN, and VID PARSAN :
 :
                          Defendants. :
-------------------------------------------------------------------- X

GREGORY H. WOODS, District Judge:

     Plaintiff Levit Fernandini alleges that he was exposed to overcrowding and poor plumbing while incarcerated at the Metropolitan Correction Center (the "MCC") in Manhattan. What's worse, he asserts: he was bitten by a rat. Defendants have moved for summary judgment with respect to Plaintiff's surviving claims against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 (the "FTCA"), as well as his *Bivens* claims against the individual defendants for alleged violations of his constitutional rights. The Court adopts Magistrate Judge Fox's recommendations to dismiss Plaintiff's *Bivens* claims. Because the discretionary function exception to the FTCA applies to Defendants' alleged conduct here, the Court also dismisses Plaintiff's claims under the FTCA.

I.     BACKGROUND

On February 14, 2019, Magistrate Judge Kevin Fox issued a Report and Recommendation to the Court regarding Defendants' motion for summary judgment (the "Report").  Dkt. No. 150.  Readers are referred to the Report for a comprehensive review of the procedural history of the case and the facts relevant to Defendants' motion for summary judgment.  The Report recommends that the Court grant Defendants' motion with respect to Plaintiff's *Bivens* claims, largely because those claims are precluded under the Supreme Court's decision in *Ziglar v. Abassi*, —U.S.—, 137 S.Ct. 1843 (2017).  The Report also recommends that Defendants' motion be denied with respect to Plaintiff's claims under the FTCA on the basis that the discretionary function exception to the Government's waiver of sovereign immunity does not apply to Defendants' alleged conduct.  Finally, the Report proposes that the Court deny Defendants' motion for summary judgment with respect to certain of Plaintiff's negligence claims because the record demonstrates the existence of disputed issues of material fact.

Defendants filed a timely objection to the Report (the "Objection").  Dkt. No. 151.  The Objection contends that the Report applied the incorrect standard of review by limiting itself to a review of facts asserted in the pleadings, rather than evaluating all of the evidence presented to it, as is permitted in the context of a motion brought under Fed. R. Civ. P. 12(h)(3).  The Objection also challenges the Report's conclusion that the discretionary function exception does not apply to Defendants' alleged conduct, and the Report's conclusions regarding Plaintiff's negligence claims.  While the Court adopts the majority of the Report, for the reasons that follow, it agrees with the United States' analysis with respect to the proper application of the discretionary function exception.

## II.   DISCUSSION

### A.   Standard of Review

In reviewing a Report and Recommendation, a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3).  To trigger *de novo* review, a party's objections to the report must be "specific and clearly aimed at particular findings" in the report.  *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) (citation omitted).  To accept those portions of the report to which no objection has been made, or where a "party makes only conclusory or general objections, or simply reiterates his original arguments," a district court reviews the report "only for clear error."  *Silva v. Peninsula Hotel,* 509 F. Supp. 2d 364, 366 (S.D.N.Y. 2007) (internal citation and quotation marks omitted).  After conducting the appropriate review, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

### B.   Overview of the FTCA's Discretionary Function Exception

The United States is immune from suit except to the extent that it consents to be sued.  *See United States v. Mitchell*, 463 U.S. 206, 212 (1983).  Thus, for suits brought against the United States, consent is a prerequisite for subject matter jurisdiction in the federal courts.  *See id.*

The FTCA "constitutes a limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances."  *Liranzo v. United States*, 690 F.3d 78, 85 (2d Cir. 2012) (quoting *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007)).  Specifically, the FTCA waives the sovereign immunity of the United States with respect to:

> claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be

3

>liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The FTCA's "discretionary function" exception to the federal government's limited waiver of sovereign immunity bars liability for "any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). If a claim falls within this exception, a court lacks jurisdiction to entertain the claim.

The discretionary function exception bars suit "only if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in 'considerations of public policy' or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (quoting *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991)).

The nature of acts that are treated as discretionary for purposes of this analysis is well-established. "[T]he discretionary function exception bars claims based on day-to-day management decisions if those decisions require judgment as to which of a range of permissible courses is wisest." *Fazi v. United States*, 935 F.2d 535, 538 (2d Cir. 1991). "When there are government regulations bearing on day-to-day decisions, applicability of the discretionary function exception depends largely on whether or not the regulation specifically 'mandates particular conduct.'" *Id.* (quoting *Gaubert*, 499 U.S. at 324). If the regulation at issue "is not sufficiently specific to control the conduct in question . . . or is not mandatory, there is room for discretion." *Id.* (citing *Gaubert*, 499 U.S. at 324). The Supreme Court has explained that a discretionary act is one that "involves choice or judgment" and requires the officers' judgment "as to which of a range of permissible courses is the wisest." *Gaubert*, 499 U.S. at 335. On the other hand, if a regulation specifically mandates particular conduct, the discretionary function exception does not bar the claim, "because

4

there is no room for choice and the action will be contrary to policy." *Id.* at 324.

If the conduct at issue was discretionary, the second condition requires that the court determine whether that conduct was "based on considerations of public policy." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 537 (1988). This analysis focuses "on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. "Moreover if, pursuant to federal statute, regulation, or agency guidelines, a government official or employee is permitted discretion, then there is a presumption that the exercise of that discretion implicates policy judgments." *Brotman v. United States*, 111 F. Supp. 2d 418, 423 (S.D.N.Y. 2000).

### C. The Court Can Consider Evidence Outside the Pleadings

The Court is entitled to review materials outside the pleadings to evaluate whether the discretionary function exception to the FTCA applies. As described above, if the United States has not waived its sovereign immunity with respect to a claim, the Court does not have jurisdiction to entertain it. Therefore, the United States' motion regarding the applicability of the discretionary function exception to the FTCA is one that challenges the Court's jurisdiction over those claims.

This motion was styled by the United States as one brought under Rule 12(b)(1), Rule 12(c), and Rule 56. *See* Notice of Motion, Dkt. No. 134. The United States submitted a substantial volume of evidence in support of its motion, including information pertinent to the Court's evaluation of the applicability of the discretionary function exception. *See generally* Dkt. Nos. 136-144. The Report concluded that because the Defendants' motion was filed after their answer it would be "treated as a Rule 12(c) motion and will be determined solely on the pleadings." Report at 12.

The Court respectfully disagrees with that conclusion for two reasons. First, as the United States points out in the Objection, this jurisdiction-testing motion is better characterized as a motion under Rule 12(h)(3), rather than as a motion under Rule 12(c). *See, e.g.*, *Anson v. United States*, 294 F.

5

Supp. 3d 144, 156 (W.D.N.Y. 2018), *appeal dismissed*, No. 18-1291, 2018 WL 5733602 (2d Cir. Sept. 10, 2018). Such a motion is "subject to the same standard as [a] motion[] brought pursuant to Rule 12(b)(1)." *Reese v. Approved Funding Corp.*, No. 12-CV-3307 (CBA)(LB), 2013 WL 4520427, at *2 (E.D.N.Y. Aug. 26, 2013). As the Government describes in the Objection, the reference to Rule 12(c) in its notice of motion referred specifically to its arguments directed at the sufficiency of Plaintiff's *Bivens* claims, not to its jurisdictional challenge to Plaintiff's FTCA claims, as suggested by the Report.

Second, in the context of a motion brought under 12(b)(1), the Court has the latitude to review evidence outside of the scope of the pleadings. "Although courts are generally limited to examining the sufficiency of the pleadings on a motion to dismiss, on a challeng[e] [to] the district court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings." *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 255 n.30 (2d Cir. 2003) (citations omitted). Indeed, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999).

The Report's analysis of jurisdictional issues was unnecessarily constrained to the facts asserted in the pleadings. While the Report reviewed some of that evidence in the alternative, it did so informed by its prior conclusion that those facts could not be properly considered. As a result, the Report's analysis of evidence outside of the pleadings was admittedly limited. *See, e.g.*, Report at 14 ("From the Court's cursory glance at Exhibit A, it appears to contain . . . ."). In evaluating Defendants' jurisdictional motion *de novo* in light of the objections, the Court has thoroughly reviewed the evidence presented by Defendants in support of their motion.

6

D.  **The Discretionary Function Exception Applies**[1]

Defendants' decisions regarding the number of inmates to be housed in Plaintiff's facility and the maintenance of that facility were decisions that were left to the discretion of prison officials. The statutory provision that guides the administration of prison facilities states: "The Bureau of Prisons, under the direction of the Attorney General, shall-- . . . (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise . . . ." 18 U.S.C. § 4042(a)(2). The statute does not define what constitutes "suitable quarters," nor does it mandate how the Bureau of Prisons should accomplish the goal of providing such quarters and providing for the safekeeping of persons committed to the Bureau. As a result, in general, decisions regarding the best way to comply with this broad statutory mandate are discretionary in nature. *See Needham v. United States*, No. 17 CIV. 05944 (ER), 2018 WL 3611944, at *4 (S.D.N.Y. July 27, 2018) (holding that Section 4042(a) is discretionary because it "does not dictate how the BOP should achieve [the] goals" it lists); *Scrima v. Hasty*, No. 97 Civ. 8433 (JGK), 1998 WL 661478, at *3 (S.D.N.Y. Sept. 24, 1998) (same because Section 4042(a) "sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates"); *Enigwe v. Zenk*, No. 03-

---

[1] A plaintiff bears the initial burden to state a claim that is not barred by the discretionary function exception. *Molchatsky v. United States*, 713 F.3d 159, 162 (2d Cir. 2013). The Court does not adopt the Report's analysis of whether the United States or the plaintiff bears the burden of establishing that the discretionary function exception applies. The Report held that the United States bears the burden of establishing the applicability of the discretionary function exception by a preponderance of the evidence. Report at 10. But this is an open question in this Circuit. "Neither the Second Circuit nor the United States Supreme Court has explicitly answered whether the United States or a plaintiff bears the ultimate burden of proving the applicability of the discretionary function exception." *Ruiz ex rel. E.R. v. United States*, No. 13-CV-1241 (KAM) (SMG), 2014 WL 4662241, at *4 (E.D.N.Y. Sept. 18, 2014). And district courts have reached contradictory conclusions on the issue. *Compare Molchatsky v. United States*, 778 F. Supp. 2d 421, 431 (S.D.N.Y. 2011), *aff'd*, 713 F.3d 159 (2d Cir. 2013), *and aff'd*, 713 F.3d 159 (2d Cir. 2013) ("In the FTCA context, because the United States, as a sovereign, is immune from all suits against it absent an express waiver of its immunity . . . *a plaintiff bears the burden* of showing that the DFE does not apply to his claim.") (internal citations omitted) (emphasis added), *with Anson*, 294 F. Supp. 3d at 158 ("This Court agrees with what appears to be the prevailing view in this Circuit that *the Government bears the burden* of establishing the applicability of the discretionary function exception.") (emphasis added). The Court need not reach this question in this case, however, because the discretionary function exception readily applies here regardless of which party bears the burden to establish its applicability.

CV-854 CBA, 2007 WL 2713849, at *8 (E.D.N.Y. Sept. 14, 2007) (holding that "in general decisions regarding the best way to safeguard prisoners are discretionary in nature") (collecting cases).

The more specific policy statements provided by Defendants support the conclusion that the challenged decisions were discretionary. The Defendants presented Federal Bureau of Prisons Program Statement 1060.11 on Rated Capacities for Bureau Facilities ("Statement 1060.11") to support the contention that determinations regarding the number of inmates to be placed in a given facility are discretionary in nature. Declaration of Dennis Perez ("Perez Decl."), Dkt No. 144, Ex. A. That document sets forth a number of "procedures for determining and reporting each institution's rated capacity and its total capacity." *Id.* at 1.

The Report is correct in observing that "two sections of [Statement 1060.11] . . . contain specific directives about capacity computation and reporting duties, and do not involve the exercise of any discretion in connection with those mandates." Report at 14-15. However, Statement 1060.11 does not mandate how many inmates can be housed in a particular facility. The program guidance provides uniform instructions about how prison officials should measure a facility's capacity. But it does not dictate how prison officials should use that information. Instead, Statement 1060.11 makes clear that its purpose is to provide officials with data that will inform discretionary decisions regarding the allocation of prison resources. Statement 1060.11 at 1 ("<u>PROGRAM OBJECTIVES</u>: The expected results of this program are: a. The Bureau's inmate population will be managed and distributed on an *equitable and rational* basis . . . .") (emphasis added). With respect to the matters at issue here, Statement 1060.11 is not mandatory; its programmatic objectives leave decisions regarding housing allocation to be made by prison officials on an "equitable and rational" basis in their discretion.

The evidence also supports the conclusion that Defendants' decision to provide weekly pest control treatment by an outside vendor was discretionary. Defendants submitted two policy

8

guidelines related to this issue: Program Statement P1600.09 ("Statement P1600.09"), Perez Decl., Ex B, and an Institution Supplement on Pest Control for the facility where Plaintiff was housed (the "Institution Supplement"). Perez Decl., Ex. C. Statement P1600.09 contains a provision related to Pest Control. That section provides broad guidance regarding how prison workers should deal with pest control issues. Statement P1600.09 at Ch. 2, p. 3 ("Each institution develops a written plan for pest control measures . . . . An alternative to in-house pest control is to contract with a professional pest control company. Environmentally safe products are used where possible."). Statement P1600.09 leaves day-to-day decision making to prison officials.

The same is true of the Institutional Supplement. It permits prison officials to determine whether pest management will be conducted in-house, or by an outside contractor. Institution Supplement at 1-2. It also allows them to determine the type of pest control to be used, as well as the intervals for which pest control will be implemented—on a monthly basis or "as needed." *Id.* at 2. This authority is guided by a broad statement of purpose: "to ensure the institution is maintained as free as possible from pests and rodents . . . ." *Id.* at 1. The Institutional Supplement leaves discretion to prison officials to make day to day decisions within those broad parameters.

All of these discretionary decisions related to policy matters. As described earlier, there is a presumption that if an official's action is discretionary, it satisfies the second, "policy" test. "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert*, 499 U.S. at 324. If "established governmental policy, as expressed or implied by statute, regulation or agency guidelines, allows a Government agent to exercise discretion" such that the first prong of the test is satisfied, "it must be presumed [with respect to the second prong,] that the agent's acts are grounded in policy when exercising that discretion." *Gaubert,* 499 U.S. at 324. "For a complaint to survive a motion to

9

dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 324-25.

Viewed through the lens of this presumption, the actions at issue here meet the second policy test. Plaintiff has not opposed this motion, and, as a result, no competing evidence has been presented to rebut the presumption. The Report takes the position that the type of decisions left to the discretion of prison employees regarding pest control under the relevant program documents do not rise to the level of "legislative and administrative decisions grounded in social, economic, and political policy" intended to be protected by the discretionary function exception. Report at 15 (quoting *Gaubert*, 499 U.S. at 322-23). In reaching this conclusion, the Report's analysis seems to assume that only decisions involving significant issues of social, economic and political policy are shielded by the discretionary function exception. But that is not the case. "[T]he discretionary function exception bars claims based on day-to-day management decisions if those decisions require judgment as to which of a range of permissible courses is wisest." *Fazi*, 935 F.2d at 538. In order to be protected by the discretionary function exception, the government official's decision must be *grounded in* the policy of the relevant regulatory regime—it need not be a decision that *establishes* that policy. The prison officials' day-to-day decisions at issue here—regarding prison population, facility maintenance, and the manner of implementing pest control—fall well within the scope of the discretionary function exception. These are not the type of determinations that a federal court should second guess.

Because the discretionary function exception applies to the decisions that are the basis of Plaintiff's FTCA claims, those claims are dismissed.[2]

### E. No Plain Error With Respect to Dismissal of Plaintiff's *Bivens* Claims

None of the parties has objected to the Report's recommendation that Plaintiff's *Bivens* claims be dismissed. Therefore, the Court reviews that section of the Report for clear error. Careful review of that portion of the Report reveals no clear error. Therefore, the Court adopts that portion of the Report in its entirety.

## III. CONCLUSION

For the foregoing reasons, the Court adopts the Report with respect to Plaintiff's *Bivens* claims, and declines to adopt the Report with respect to its conclusions regarding the applicability of the discretionary function exception to the FTCA. Instead, the Court grants Defendants' motion to dismiss Plaintiff's FTCA claims against the United States because the discretionary function exception applies to Defendants' alleged conduct.

The Court requests that counsel for Defendants provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Clerk of Court is respectfully requested to terminate the motion pending at Dkt. No. 134, to enter judgment for Defendants, and to close this case.

SO ORDERED.

Dated: March 5, 2019
New York, New York

GREGORY H. WOODS
United States District Judge

---

[2] Because the Court has concluded that it does not have subject matter jurisdiction over Plaintiff's FTCA claims, it does not address the Report's recommendation that Plaintiff's negligence claims should survive Defendants' motion.